UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| WENGER S.A., | Docket No.:  15-cv-637 (WMS)(HKS) |
| Plaintiff, | |
| -against- | |
| FUZHOU HUNTER PRODUCT IMPORT AND EXPORT CO., LTD., KRUMMHOLZ INTERNATIONAL, INC., SWISSDIGITAL USA CO., LTD., SWISSGEAR SARL, and ZHIJIAN "HUNTER" LI, | |
| Defendants. | |

**PLAINTIFF WENGER S.A.'S RESPONSE TO FUZHOU HUNTER PRODUCT IMPORT AND EXPORT CO., LTD. AND SWISSGEAR SARL'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

Plaintiff Wenger S.A. ("Wenger") responds to Defendants Fuzhou Hunter Product Import and Export Co., Ltd. ("Fuzhou Hunter") and Swissgear Sarl's ("Swissgear") Motion to Dismiss for Lack of Subject Matter Jurisdiction, [D.E. 80], and states as follows:

## INTRODUCTION

Three years ago, the legal odyssey that led to this litigation began when Plaintiff's worldwide distributor, John Pulichino, confronted Defendant Zhijian (Hunter) Li ("Li") at a travel goods industry tradeshow in Phoenix, Arizona, when he found Li marketing knockoffs of backpacks bearing Wenger's registered trademarks and copyrighted design. Li never denied his actions and instead attempted to justify his marketing of products that were identical to the products his Chinese factory was hired to manufacture – for Wenger. Thus, two years ago, in January 2015, Li commenced litigation in this District attempting to establish his prior right to use the Wenger trademarks and copyrighted design. *See Krummholz Int'l, Inc., et al. v. Wenger,*

S.A., Case No. 15-cv-00086; *see also* Declaration of Zhijian (Hunter) Li, [D.E. 34], in which Li describes the events that led to this litigation and his efforts to cancel Wenger's trademark registrations and usurp Wenger's copyrighted design.

Six months after Li commenced litigation in this District, and after Wenger learned that Li was scheduled to attend yet another tradeshow in the United States (in Las Vegas, Nevada) to market his knockoff goods, Wenger commenced this action in the District of Nevada. The District Court issued a temporary restraining order against the four named defendants – including Fuzhou Hunter and Swissgear. [D.E. 18]. Li filed a declaration in opposition to the TRO in which he admitted that Fuzhou Hunter is a Chinese manufacturer that supplies goods to Swissdigital, the U.S. Company that Li was using to try to defeat Wenger's trademark and copyright registrations. [D.E. 34].

Eventually, the District of Nevada denied Wenger's motion for a preliminary injunction because the record presented at that time did not establish irreparable harm. [D.E. 48]. This Court dismissed Li's complaint for lack of personal jurisdiction. [Case No. 15-cv-00086, D.E. 33]. The parties stipulated to transferring the Nevada litigation to this District, [D.E. 50], the Court entered a Case Management Order, [D.E. 60], and the parties thereafter commenced discovery.

On the eve of the completion of discovery, Fuzhou Hunter and Swissgear filed their Motion to Dismiss, pursuant to Rule 12(b)(1), Fed. R. Civ. P., asserting that this Court lacks subject matter jurisdiction over them. These Defendants hope to avoid having the merits of their conduct adjudicated, prompting their assertion, that this Court lacks jurisdiction over them.

As explained in the first argument below, defendants are wrong; this Court indeed possesses subject matter jurisdiction. Defendants have improperly conflated a merits challenge

to Wenger's complaint with a subject matter jurisdiction challenge.  The issues raised by these defendants are not properly resolved under Rule 12(b)(1), and instead can only be resolved on the merits.  Thus, the Motion to Dismiss should be summarily denied.

If the Court proceeds to consider the arguments presented by these defendants as to why they should not be held responsible for the trademark and copyright violations alleged by Wenger, the Court will see that Wenger has properly asserted federal claims based on conduct that occurred in the United States and seeks relief properly afforded against these Defendants under federal laws which protect Wenger's rights in the United States.  Wenger presents, through deposition testimony and exhibits, some of the evidence that will be presented at trial to demonstrate that Wenger is the victim of the defendants' willful trademark and copyright infringement and is entitled to relief from that infringement.

At the end of the day, Li will have his full day in Court to attempt to persuade a jury to accept his knockoffs, in light of Wenger's established federal rights.  But Li, and the companies he created to unlawfully compete with the company that hired his factory to produce Plaintiff's products, cannot avoid a full examination of Defendants' conduct on the merits – through the present motion or any other pre-trial tactic.  When the evidence establishes that Defendants purloined Wenger's trademarks and copyrighted design, then the proper remedy can be imposed on all four defendants for their participation in this unlawful infringement here in the United States.

## ARGUMENT

**I.    DEFENDANTS    IMPROPERLY    CONFLATE    SUBJECT    MATTER JURISDICTION WITH A MERITS DETERMINATION**

Defendants' Motion relies on the predicate that Plaintiff seeks to improperly extend the Lanham and Copyright Acts to conduct beyond the extraterritorial reach of these federal laws. Defendants rely primarily on the Second Circuit's 1956 decision in *Vanity Fair Mills v. T. Eaton Co.*, 234 F.2d 633 (2d Cir. 1956), to support their contention. *See* Motion at 4-20. The Second Circuit's 1995 decision in *Sterling Drug, Inc. v. Bayer AG*, 14 F.3d 733, 736 (2d Cir. 1994) establishes why Defendants' arguments are without merit. *See* Argument II, *infra*.

However, this Court need not even address Defendants' contention at this time because the question of whether Wenger is improperly asserting federal trademark and copyright claims to extraterritorial conduct is not a jurisdictional question that can be properly addressed under Rule 12(b)(1). The Supreme Court has made it abundantly clear that the issues raised by Defendants involve the merits of this case – and not subject matter jurisdiction.

In *Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006), a magistrate judge had dismissed a Title VII claim for lack of subject matter jurisdiction and the Supreme Court granted review to determine whether the Title VII issue was jurisdictional or simply an element of plaintiff's claim for relief. In reversing the subject matter dismissal, the Supreme Court explained, "[j]urisdiction … is a word of many, too many, meanings." *Id.* at 509 (citation omitted). The Court recognized that it and other courts had been less than meticulous in explaining the dichotomy between subject matter jurisdiction and a merits determination, and the Court explained that these "drive-by jurisdictional rulings … should be accorded no precedential effect." *Id.* at 511-12 (internal citation and quotation marks omitted). As the Court explained, a

4

plaintiff properly invokes federal question jurisdiction under 28 U.S.C. § 1331 by pleading a colorable claim "arising under" the Constitution or laws of the United States. *Id.* at 512 (citation omitted). As the Court further explained:

> If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then the courts and litigants will be duly instructed and will not be left to wrestle with the issue. But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.

*Id.* at 515-16 (internal citation omitted). In that Title VII context, the Court therefore held that the elements of the claim were to be decided on the merits – by a jury – and not on a motion to dismiss for lack of subject matter jurisdiction. *See id.* at 514-16.

In *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 160-69 (2010), the Supreme Court applied *Arbaugh* to a copyright case. As the Court explained, "[j]urisdiction refers to a court's adjudicatory authority. Accordingly, the term 'jurisdictional' properly applies only to 'prescriptions delineating the classes of cases (subject matter jurisdiction) and the persons (personal jurisdiction) implicating that authority." *Id.* at 160-61 (citation omitted).

In *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 873-74 (9th Cir. 2014), the Court of Appeals applied *Arbaugh* and *Muchnick* to hold that the "use in commerce" element of the Lanham Act is not connected to the Lanham Act's jurisdictional grant in 15 U.S.C. § 1121(a). *See also Just Tacos, Inc. v. Zezulak*, 957 F. Supp. 2d 1202, 1205 (D. Haw. 2013) (denying motion to dismiss for lack of subject matter jurisdiction and ruling that the "use in commerce" requirement was not a jurisdictional predicate, but rather a "substantive non jurisdictional element of a claim under the [Lanham] Act").

Whether Wenger's claims violate principles of extraterritoriality is not a jurisdictional issue but an issue addressed to the merits of the case. In *Morrison v. Nat'l Australia Bank, Ltd.*,

5

561 U.S. 247, 253-54 (2010), the Supreme Court applied *Arbaugh* to address the extraterritorial reach of federal securities laws and held that extraterritoriality is not an issue that implicates subject matter jurisdiction.   Indeed, the district court in *Morrison* had granted a motion to dismiss pursuant to Rule 12(b)(1), which the Second Circuit affirmed.   The Supreme Court called that a threshold error and explained that to ask what conduct violates the federal securities laws is a merits question.   *Id.*; *see also United States v. Yousef*, 750 F.3d 254, 261 (2d Cir. 2014) (explaining that *Morrison* has clarified the subject matter/merits dichotomy and holding that pre-*Morrison* decisions are now abrogated).

To ask what conduct violates the Lanham and Copyright Acts is also a merits question. In *Trader Joe's Co. v. Hallat*, 835 F.3d 960, 966-69 (9th Cir. 2016), the Court of Appeals explained in detail why the Lanham Act's extraterritorial reach is not a question of subject matter jurisdiction.   The Court of Appeals rejected a defendant's challenge under Rule 12(b)(1), brought alongside a challenge on the merits pursuant to Rule 12(b)(6).   The motion to dismiss filed by Fuzhou Hunter and Swissgear is based solely on Rule 12(b)(1) and not Rule 12(b)(6), Rule 56 or any other merits-based request for relief.   As the foregoing case law makes clear that the extraterritorial implications of the instant claims involve merits determinations, the motion should be denied because the issues raised by the Defendants are not properly addressed through a Rule 12(b)(1) motion.

## II.     WENGER MEETS THE SECOND CIRCUIT'S *STERLING DRUG* TEST

Although this Court need not reach the merits of Defendants' claims at this time because their motion should be denied as unrelated to the issue of subject matter jurisdiction, it is worth discussing why Wenger ultimately is entitled to relief on the merits.

6

While Wenger naturally seeks to protect its intellectual property interests worldwide, Wenger's interests in this federal court involve Defendants' use of Wenger's intellectual property in domestic channels in the United States.  When Defendants Fuzhou Hunter and Swissgear Sarl participated in the manufacture and marketing, in the United States, of items bearing Wenger's trademark and copyrighted design, they participated in *domestic* infringement of Wenger's intellectual property.  Therefore, the "stringent *Vanity Fair* test" upon which Defendants rely in their Motion to Dismiss is inapplicable.  *See Sterling Drug, Inc.*, 14 F.3d at 746 ("While the stringent *Vanity Fair* test is appropriate when the plaintiff seeks an absolute bar against a corporation's use of its mark outside our borders, that test is unnecessarily demanding when the plaintiff seeks the more modest goal of limiting foreign uses that reach the United States.").

On the basis of *Sterling Drug's* controlling precedent, Defendants' Motion must be denied because Wenger's Complaint is fundamentally addressed to Defendant's use of Wenger's protected trademarks and copyrighted design *in the United States*.  *See* Complaint, [D.E. 1], ¶¶ 9-15 (jurisdictional allegations alleged participation by all defendants at trade shows in Phoenix, Arizona and Las Vegas, Nevada); ¶¶ 44-49 (containing photo of booth at Las Vegas trade show containing Defendant Swissgear Sarl's marketing information at 2015 Consumer Electronics Show in Las Vegas, Nevada; alleging that Fuzhou Hunter was listed as an exhibitor at 2015 Licensing Expo trade show held in Las Vegas, Nevada).

The allegations in the Complaint describe Defendants' participation in domestic trade shows in several U.S. states, where Defendants participated in the marketing and offering for sale of items, backpacks and personal travel products that featured, as their key brand logo, design copyrighted by Wenger and incorporates Wenger's trademark.  *See ADT LLC v. Vision*

*Security, LLC*, 2014 WL 3764152 (S.D. Fla. 2014) (denying motion to dismiss Lanham Act claims where defendants engaged in commercial advertising in multiple states); *see also Mother Waddles Perpetual Mission, Inc. v. Frazier*, 904 F. Supp. 603, 611 (E.D. Mich. 1995) (denying motion to dismiss and for partial summary judgment when plaintiffs submitted evidence that Defendants used infringing trademark in advertisements to multiple states).

Defendant Li has admitted in deposition testimony that Fuzhou Hunter and Swissgear Sarl engaged in the U.S.-based conduct at issue. *See* Excerpts of Deposition Transcript of Zhijian "Hunter" Li ("Li Dep."), attached as Exhibit "A" to this Response, [D.E. 86-1]. Li explained the key relationships in the U.S.-based infringement, which are summarized below:

- Li owns and operates a China-based factory named Quanzhou New Hunter Bags and Luggage. Li Dep. at 72:5-8. Quanzhou New Hunter manufactures backpacks. Li Dep. at 143:15-25.

- Fuzhou Hunter, which was once owned in part by Mr. Li's ex-wife and is now purportedly wholly owned by his parents, is the export agent for Quanzhou New Hunter Bags and Luggage.[1] Li Dep. at 147:10-25; 137:19-23.

- Li's factory, Quanzhou New Hunter Bags and Luggage, and affiliated corporate entities, including Fuzhou Hunter, participated in the manufacturing of personal travel goods bearing the "SwissGear" brand for Wenger through its licensee, Group III International ("Group

---

[1] Li testified that, as an employee of a Chinese state-owned company at the time that Fuzhou Hunter was founded by his ex-wife and his father, he could "possible [sic] go to jail at that time" if he was an owner of Fuzhou Hunter (a company that, of course, features his name). Li Dep. at 138:2-12. Li admitted that he has deliberately concealed his true scope of control over Defendant Fuzhou Hunter, originally to avoid issues with the Chinese Government. Now he seeks to narrow potential liability for his affiliated corporations with this continued concealment.

III"), Li Dep. at 97:5-8 *see also* Excerpts of Deposition Transcript of John Pulichino ("Pulichino Dep."), attached as Exhibit "B" to this Response, [D.E. 86-2], at 57:18-59:10.

- During Li's business relationship with Group III, John Pulichino made an unannounced visit to Li's factory in China in 2010 or 2011 and discovered that it was manufacturing counterfeit Wenger products, which Li subsequently burned in an overt display to continue doing business with Group III and Wenger.  Li Dep. at 114:11-115:23; Pulichino Dep. at 104:22-106:18.

- In March 2014, Li and John Pulichino, president of Group III, had another dispute at a trade show in Phoenix, Arizona, during which Pulichino identified products being marketed by Li and his companies that infringed upon Wenger's intellectual property.  Li Dep. at 61:15-62:2; 100:12-101:5; Pulichino Dep. at 64:20-65:22; *see also* Declaration of John Pulichino, [D.E. 5] at ¶¶ 17, 25-26.  Fuzhou Hunter originally had the contract for the display booth at the March 2014 trade show in Phoenix.  Li Dep. at 210:16-21.

- Thereafter, in June 2015, Li and several of his companies presented products at a trade show in Las Vegas, Nevada.  The products were marketed as "SwissDigital by SwissGear Sarl" and featured a logo that is identical to Wenger's copyrighted design and incorporates Wenger's trademarks.  Li Dep. at 160:3-13; Pulichino Dep. at 98:1-100:7.

- SwissGear Sarl rented the Las Vegas trade show booth from Fuzhou Hunter in order for, in Li's own words, to "promote, you know, my brand."  Li Dep. at 223:15-23; *see also* 309:14-15.

If not for Wenger's vigilance, Defendants would have engaged in additional infringing activities in the United States.  That this litigation may have ended Defendants' wrongful conduct in the United States is no bar to the Court's subject matter jurisdiction.  *See RBCI*

*Holdings, Inc. v. Drinks Americas Holdings, Ltd.*, 2008 WL 759339, at *7 (S.D.N.Y. Mar. 20, 2008) (defendant's cessation of the use of a protected mark outside of New York following the "onset of litigation" did not warrant dismissal because defendant's promotional activities, as well as the injury to plaintiff's reputation and goodwill, were deemed to affect interstate commerce within the scope of Lanham Act); *Shevy Custom Wigs, Inc. v. Aggie Wigs*, 2006 WL 3335008, *2-*3 (E.D.N.Y. Nov. 17, 2006) (denying motion to dismiss Lanham Act trademark infringement claim where plaintiff alleged that defendants intended to use infringing trademarks in connection with sale, distribution, or advertising of defendants' products).

In short, Defendants' efforts to minimize the interstate commerce effects (by arguing inapplicable *Vanity Fair* factors) of launching a brand of backpacks and luggage featuring Wenger's trademarks and copyrighted design (with a booth rented by Fuzhou Hunter and with signage showing Swissgear Sarl's name) at major industry tradeshows for the travel goods industry at-large should be rejected. *C.f. Mueller Co., Mueller Intern., Inc. v. U.S. Pipe and Foundry Co.*, 2004 WL 102491, *3-*4 (D.N.H. Jan. 22, 2004) (unfair competition claim relating to copying of fire hydrant shape dismissed since purported copy had not yet been introduced in commerce; nor had tangible steps to launch such a product been undertaken).

As the Second Circuit explained in *Sterling Drug*, 14 F.3d at 746, while "Congress did not intend the Lanham Act to be used as sword to eviscerate a foreign corporation's foreign trademark, it did intend the Act to be used as a shield against foreign uses that have significant trademark-impairing effects upon American commerce."  Defendants are employing a classic red-herring argument to shield corporate entities who Wenger alleges – and has *proved* – actively participated in Defendants' scheme to infringe upon Wenger's U.S. intellectual property in the U.S.  These Defendants will have the opportunity to join their co-conspirators at trial to try to

10

convince a jury that their conduct did not infringe Wenger's rights.  They cannot escape their appointment with the jury with this Motion.

## III.   FUZHOU HUNTER AND SWISSGEAR SARL PERSONALLY PARTICIPATED IN TRADEMARK AND COPYRIGHT INFRINGEMENT IN THE UNITED STATES

The Second Circuit has expressly recognized that defendants such as Fuzhou Hunter and Swissgear Sarl are subject to contributory infringement liability if they engaged in personal conduct that encourages or assists the infringement.  *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 117-19 (2d Cir. 2010) (holding that one who induces, causes, or materially contributes to the infringing conduct of another may be subject to contributory infringement liability); *Granite Music Corp. v. Center Street Smoke House, Inc.*, 786 F. Supp. 2d 716, 727 (W.D.N.Y. 2011) ("joint and several liability has been imposed on defendants who have promoted or induced the infringing acts of another"); *accord Mackenzie Architects, PC v. VLG Real Estate Developers, LLC*, 2016 WL 4703736, *10 (N.D.N.Y. Sep. 8, 2016) (denying motion to dismiss copyright infringement claim based on common law doctrine of liability for vicarious infringement because allegations made it plausible that defendants had contributed to the infringement of plaintiff's design); *see also Rams v. Def Jam Recordings, Inc.*, --- F. Supp. 3d ----, 2016 WL 4399289 (S.D.N.Y. Aug. 15, 2016) (defendant implicated in the acts constituting the direct infringement may be held liable for contributory copyright infringement).

Agency principles also apply (frequently) to trademark and copyright infringement cases.  *Pinkham v. Sara Lee Corp.*, 983 F.2d 824 (8th Cir. 1992) (president and agent were personally and vicariously liable in copyright infringement due to personal involvement in sale of copyright-infringing works); *see also Bar's Leak Western, Inc. v. Pollock*, 148 F. Supp. 710, 714

(N.D. Cal. 1975) (even agents may be subjected to individual liability for copyright and trade-mark infringement and unfair competition).

Defendants' Motion readily admits that Fuzhou Hunter engaged in personal conduct that assisted the infringement when "Fuzhou Hunter rented its booth at the Expo to Swissdigital so that they could secure a desirable space and better pricing." Motion at p. 9 (citing Declaration of Shuxin Huang, [D.E. 81] at ¶ 7). Indeed, Defendant Li testified in his deposition that Fuzhou Hunter is the export agent for the products that infringe upon Wenger's trademarks and copyrighted design. *See* Li Dep. at 175:7-12.[2] These relationships more than suffice under the legal standards recited above.

Likewise, Swissgear Sarl attempts to shroud itself behind an associated corporate entity, Swissdigital, by claiming that its displays (which clearly infringe upon Wenger's intellectual property) at the Las Vegas tradeshow were "at a booth rented by Swissdigital." Motion at 19. Federal courts have regularly held that any member of the distribution chain of allegedly infringing products can be jointly and severally liable for the alleged misconduct. *See Adobe Systems, Inc. v. Blue Source Group, Inc.*, 125 F. Supp. 3d 945, 973 (N.D. Cal. 2015) (collecting cases); *see also TASER Intern., Inc. v. Stinger Sys.*, 2012 WL 3205833, *8 (D. Nev. Aug. 3, 2012) (denying motion for summary judgment where attorney/corporate officer associated with defendant could not meet burden showing, as a matter of law, no personal involvement in

---

[2]   In general, Fuzhou Hunter's denials of involvement with the remaining defendants in participating in the U.S. trade shows is implausible when Defendant Zhijian "Hunter" Li has already testified that Fuzhou Hunter, which he says is now owned by his parents, was founded by his family with the eventual goal of fulfilling his "dream" of making an "industry". *See* Li Dep. at 130:7-17; 132:22-134:7. Moreover, Defendant Fuzhou Hunter bears Li's unique nickname, "Hunter." Li Dep. at 12:12-25.

FOX ROTHSCHILD LLP

Lanham Act infringing scheme).  Of course, the Motion does not dispute that Defendant Li is the president of Swissgear Sarl.  *See* Motion at p. 1, n. 1.

Indeed, Defendant Li stands at the center of all of these affiliated entities, with at least agency and contributory liability principles flowing to and from him to each of the Defendants. In fact, Li admitted at his deposition that he would use his U.S. entity, Swissgear USA, to sell bags similar to the ones that were presented at the Las Vegas show based on customer demand. *See* Li Dep. at 217:8-11 ("Q. You intend to offer bags in the United States? A. My US company want to sell – you mean this? Q. Bags. A. Yes, of course. Why not.")

## IV.    CONCLUSION

Through discovery, the facts have become quite clear.  Wenger hired Li's Chinese factory to manufacturer Wenger's protected products.  Li decided to take advantage of his customer from across the world and he began selling Wenger knockoffs.  After Wenger caught Li's factory red-handed manufacturing counterfeit goods, Li apologized and promised that the wrongful conduct would cease.  But, instead of stopping, Li simply adopted a different scheme to steal Wenger's intellectual property.  He boldly registered Wenger's trademarks and copyrighted design as his own in China, the United States and around the world, and then tried to establish his business of marketing and selling infringing products in the United States.

While he claimed in his deposition that he was careful to limit his sales of knockoffs to customers outside the United States, the evidence establishes that Li and his co-defendants marketed their infringing products in the United States, at major travel good industry trade shows.  At the end of the day, the trial of this case will be straightforward.  The jury will hear and see how Li took advantage of Wenger.  Upon a finding of infringement, Wenger will request that this Court exercise its jurisdiction to vindicate Wenger's established rights and remedy this

unlawful activity.  The Motion to Dismiss should be denied forthwith so that the case can be scheduled for the earliest available trial date.

Date: March 7, 2017

Respectfully submitted,

**Attorneys for Plaintiff Wenger S.A.**

By: */s/ Joseph A. DeMaria*

**Joseph A. DeMaria, B.C.S.**
FOX ROTHSCHILD LLP
One Biscayne Blvd., Suite 2750
2 S. Biscayne Blvd.
Miami, Florida 33131
Telephone: 561.835.9600
Email: jdemaria@foxrothschild.com

**David I. Greenbaum, Esq.**
FOX ROTHSCHILD LLP
222 Lakeview Avenue, Suite 700
West Palm Beach FL 33401
Telephone: 561.835.9600
Email: dgreenbaum@foxrothschild.com

**Caroline A. Morgan, Esq.**
FOX ROTHSCHILD LLP
100 Park Avenue, 15th Fl.
New York, NY 10017
Telephone: 212-878-7906
Email: cmorgan@foxrothschild.com

**James W. Grable, Jr., Esq.**
CONNORS LLP
1000 Liberty Building
424 Main Street
Buffalo, New York 14202
Telephone: (716) 852-5533
Email: jwg@connorsllp.com

cc:     All counsel via CM/ECF

ACTIVE\44703928.v3

14

FOX ROTHSCHILD LLP